# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> CHRISTOPHER ANTHONY TORRES, <br><br> Defendant. | No. 14-CR-126-LRR <br><br> **ORDER** |

## I. INTRODUCTION

The matter before the court is Defendant Christopher Anthony Torres's Objections (docket no. 28) to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 24), which recommends that the court deny Defendant's Motion to Suppress ("Motion") (docket no. 8).

## II. RELEVANT PROCEDURAL BACKGROUND

On November 4, 2014, the grand jury returned an Indictment (docket no. 2) charging Defendant with knowingly possessing a firearm while being an unlawful user of marijuana in violation of 18 U.S.C. § 922(g)(3) (Count I) and knowingly possessing a firearm not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d) (Count II). The Indictment also contains a forfeiture allegation.

On December 2, 2014, Defendant filed the Motion. On December 11, 2014, the government filed a Resistance (docket no. 10). On December 15, 2014, Judge Scoles held a hearing on the Motion. *See* December 15, 2014 Minute Entry (docket no. 13). Defendant appeared in court with his attorney Alfred E. Willett. Assistant United States Attorney Timothy L. Vavricek represented the government. On December 23, 2014, Judge Scoles issued his Report and Recommendation. On January 13, 2015, Defendant

filed his Objections. On January 20, 2015, the government filed a Response to the Objections (docket no. 29). The Report and Recommendation and the Objections are fully submitted and ready for decision.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, a "judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *Lothridge*, 324 F.3d at 600. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND[1]

At approximately 4:00 a.m. on July 25, 2014, Officer Nathan Baughan of the Cedar Rapids Police Department received a call from dispatch informing him that shots had been

---

[1] After reviewing the hearing transcript, the court finds that Judge Scoles accurately and thoroughly set forth the relevant facts in the Report and Recommendation. *See* Report and Recommendation at 2-4. Accordingly, the court only briefly summarizes the facts. When relevant, the court relies on and discusses additional facts in conjunction with its legal analysis.

2

fired near 1135 15th Street SE. Dispatch informed officers that the shooter was wearing black pants. Other callers informed dispatch that shots had been fired at 1435 5th Avenue SE. While Officer Baughan's supervisor suggested that the 1135 15th Street SE address may not be the correct address, he instructed Officer Baughan to monitor the area. Officer Baughan arrived in the alley with a minute of dispatch. As Officer Baughan pulled into an alley in his patrol vehicle, he noticed two persons emerging from behind a bush.[2] Officer Baughan testified—and the patrol video shows—that one person, later identified as Defendant, was wearing black pants and was walking with an awkward gait. Officer Baughan testified that Defendant had a large bulge in his pants off his right hip, walked with a dropped shoulder and seemed to exhibit a pronounced limp. Officer Buaghan testified that Defendant bladed—that is, turned his body—away from Officer Baughan. Officer Baughan testified that Defendant's behavior was consistent with the behavior of a person carrying a weapon. Officer Baughan patted down Defendant and discovered a short-barrel AK-47 that was modified to operate as a .22 caliber.

## V. ANALYSIS

Defendant objects to Judge Scoles's factual statement of Officer Baughan's testimony related to the shooting suspect's description. The court finds that Judge Scoles accurately described the facts—Officer Baughan testified that he was looking for a man with black pants, but had no other identifying factors.

Defendant also objects to Judge Scoles's legal conclusion that the pat-down was justified as a *Terry* search.

---

[2] In his Objections, Defendant objects to Judge Scoles's characterization of the persons emerging from behind a bush. Officer Baughan testified that he saw them emerge from the bush prior to when his patrol video was able to capture that area. Officer Baughan's testimony was not inconsistent with the patrol video, and the court finds no reason to disturb Judge Scoles's determination that Officer Baughan's testimony was credible. Moreover, whether the persons emerged from the bush or were walking down the alley has little bearing on the court's analysis.

3

Pursuant to the Fourth Amendment, warrantless searches are per se unreasonable, "subject only to a few specifically established and well delineated exceptions." *Minnesota v. Dickerson*, 508 U.S. 366, 372 (1993). One such exception allows police officers to briefly detain suspicious persons when the officers have reasonable suspicion that criminal activity is afoot. Officers may conduct a pat-down search for weapons if they have reasonable suspicion that the person is armed. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent [person] in the circumstances would be warranted in the belief that his [or her] safety or that of others was in danger." *Id*. Whether an officer has reasonable suspicion "is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." *United States v. Zamora-Lopez*, 685 F.3d 787, 790 (8th Cir. 2012); *see also United States v. Hollins*, 685 F.3d 703, 706 (8th Cir. 2012) ("'The determination of whether probable cause,' or reasonable suspicion, 'existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time.'" (quoting *United States v. Sanders*, 196 F.3d 910, 913 (8th Cir. 1999))). "Although an officer's reliance on a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (citation omitted) (internal quotation marks omitted). "A determination that reasonable suspicion exists . . . need not rule out the possibility of innocent conduct." *Id.* at 277; *accord United States v. Stewart*, 631 F.3d 453, 457 (8th Cir. 2011).

Defendant argues that this case is controlled by *United States v. Jones*, 606 F.3d 964 (8th Cir. 2010). In *Jones*, as Judge Scoles aptly summarized:

> [A]n officer decided to "stop and frisk" a person who was walking on a mild September afternoon "wearing a long-sleeved hooded sweatshirt and 'clutching the front area of his hoodie pocket with his right hand.'" The government argued that the officer had reasonable suspicion to believe Jones was holding a firearm against his body. Clutching the outside of a hoodie pocket is one of the firearm-carrying clues the officer had been trained to observe. However, the suspect did not exhibit any of the other clues which the officer had been trained to look for "such as walking with an unusual gait, turning that part of his body away from the officers' view, adjusting his grip or the location of the item in his pocket, or running away." Under the totality of the circumstances, the [Eighth Circuit Court of Appeals] found that the officer violated the suspect's Fourth Amendment rights.

Report and Recommendation at 6 (citations omitted). Here, in contrast, officers were responding to phone calls indicating that shots had been fired in the area. *See United States v. Walker*, 771 F.3d 449, 451 (8th Cir. 2014) (holding that police are more likely to have reasonable suspicion when they are responding to reports of criminal activity). They were responding to these calls at approximately 4:00 a.m. in a high-crime area. *See United States v. Bailey*, 417 F.3d 873, 877 (8th Cir. 2005) (stating that the time of night and the amount of crime in an area are factors supporting an officer's reasonable suspicion). Officer Baughan testified that Defendant had a large bulge in his pants off his right hip, walked with a dropped shoulder and seemed to exhibit a pronounced limp. *See United States v. Chartier*, 772 F.3d 539, 545 (8th Cir. 2014) ("[A] bulge is a substantial factor in justifying a protective search.") (citing *United States v. Roggeman*, 279 F.3d 573, 579 (8th Cir. 2002)). In light of all of these facts, the court finds that Officer Baughan did not act according "to [an] inchoate and unparticularized suspicion or 'hunch,' but to the

5

specific reasonable inferences which he [was] entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

## VI. CONCLUSION

In light of the foregoing, the court **ORDERS**:

(1) The Objections (docket no. 28) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 24) is **ADOPTED**; and

(3) The Motion to Suppress (docket no. 8) is **DENIED**.

**DATED** this 30th day of January, 2015.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA